898 F.2d 156
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 SAMARITAN HEALTH SERVICE d/b/a Thunderbird Samaritan
Hospital and Health Service, Plaintiff, Appellant,
v.
Louis J. SULLIVAN, M.D.,* Secretary of Health
and Human Services, Defendant, Appellee,
 No. 88-15328.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1989.
Decided March 23, 1990.
 Before FLETCHER, FERGUSON and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Samaritan Health Services ("Samaritan"), an Arizona non-profit corporation, appeals from the order of the district court which granted summary judgment in favor of the Secretary of Health and Human Services. The district court found that it had no jurisdiction to hear Samaritan's appeal because Samaritan had failed to exhaust its administrative remedies pursuant to 42 U.S.C. Sec. 1395oo(a). We affirm.
 
 BACKGROUND FACTS
 
 3
 Samaritan owned and operated Glendale Samaritan ("Glendale facility") and had provider status under the Medicare Program for that facility. Samaritan determined that its Glendale facilities were inadequate and instituted plans for a replacement facility. A new entity, SHS Hospital Corporation ("SHS"), was formed. It was a subsidiary of Samaritan. SHS then entered into a joint venture agreement with JCL Hospital ("JCL"), an Arizona non-profit corporation. The joint venture was known as Lincoln Samaritan Hospital and Health Center, which later changed its name to Thunderbird Samaritan Hospital and Health Center ("Thunderbird"). Thunderbird ultimately did build a new facility, which was known as Thunderbird Samaritan Hospital and Health Center ("Thunderbird facility"). To make matters slightly more complicated, before the facility was actually occupied, SamCor purchased the interest of JCL in the joint venture. Samaritan is the wholly-owned subsidiary of SamCor. Therefore, the joint venture was then between Samaritan's parent, SamCor, and Samaritan's subsidiary, SHS.
 
 
 4
 On November 17, 1983, Thunderbird sent a letter to the Arizona Department of Health Services,[1] in which it requested that Samaritan's provider number for the Glendale facility be transferred to Thunderbird for the Thunderbird facility. That application indicated, among other things, that the Thunderbird joint venturers, JCL and SHS, owned the Thunderbird facility. On December 17, 1983, the medical services, patients, medical staff, contracts, records, pharmacy license, and pharmacy previously located at the Glendale facility were transferred to the Thunderbird facility.
 
 
 5
 The Arizona Department of Health Services conducted a survey on December 6, 1983, and then forwarded its recommendation to the HFCA. The Department recommended that HFCA consider Thunderbird to be a "change of ownership, 42 U.S.C. Sec. 489.18, with simultaneous relocation to new facility and change of name from Glendale" and allow it to retain the same provider number. The HFCA, in a letter dated February 14, 1984, notified Thunderbird that Samaritan's provider agreement for the Glendale facility had been "automatically assigned" to Thunderbird for the Thunderbird facility pursuant to 42 CFR Sec. 489.18.
 
 
 6
 However, in a letter dated April 6, 1984, the HFCA informed Thunderbird, based upon the information it then had, there had not, in fact, been an automatic assignment of the Samaritan provider agreement and number. The agency explained that it had determined that the Glendale facility, which was operated by Samaritan, had ceased to exist as of December 16, 1983, and that the Samaritan provider number was, therefore, deemed terminated. However, the agency assigned Thunderbird a new provider number for its Thunderbird facility as of December 17, 1983. Thus, there was no period during which Thunderbird operated the Thunderbird facility without a provider number.
 
 
 7
 On May 25, 1984, Thunderbird requested that the HFCA reconsider its characterization of Thunderbird as a new provider. Thunderbird also requested a hearing before the Administrative Law Judge ("ALJ"). On February 19, 1985, the HFCA moved to dismiss Thunderbird's request for an administrative hearing on the grounds that there was no jurisdiction. The HFCA then denied Thunderbird's request for reconsideration on September 3, 1985, and asserted that Thunderbird had no standing under section 498.5 to challenge the HFCA's decision that the old provider number had not automatically been transferred to the Thunderbird facility. It indicated that any challenge should be appealed to the Provider Reimbursement Review Board ("PRRB"). The ALJ subsequently dismissed the case for want of jurisdiction on July 16, 1986. Thunderbird then filed an appeal with the Department of Health and Human Services Appeals Council and asked the Council to vacate the ALJ's order. The Appeals Council, instead, affirmed the ALJ's finding that "no adverse initial determination under 42 CFR Sec. 489.3 has been issued to which appeal rights flow." The Appeals Council sua sponte referred the case to the PRRB. Thunderbird then requested a hearing before the PRRB. That hearing is still pending.
 
 
 8
 Thereafter, Samaritan[2] filed a complaint in the district court in which it appealed from the finding that there was no jurisdiction and requested that the district court order the administrative courts to take jurisdiction. The Secretary of the Department of Health and Human Services ("Secretary") and Samaritan filed cross motions for summary judgment. The district court granted the Secretary's motion and dismissed the complaint for lack of jurisdiction due to Samaritan's failure to exhaust administrative remedies. Samaritan then filed a timely appeal to this court.
 
 JURISDICTION AND STANDARD OF REVIEW
 
 9
 The district court found that it had no jurisdiction to hear this case. We have jurisdiction over this appeal. 28 U.S.C. Sec. 1291.
 
 
 10
 We review the granting of summary judgment de novo, and apply the same standards that the trial court does. Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986). We will not overturn the agency's interpretation of its own rules as long as that interpretation is consistent with the statutory directives, language, and purpose of the regulations. Pacific Coast Medical Enters. v. Harris, 633 F.2d 123, 131 (9th Cir.1980).
 
 DISCUSSION
 
 11
 Samaritan claims that it has standing to file this action since it was the subject of an "initial determination" within the meaning of 42 C.F.R. Sec. 498.3, and thereby acquired rights to an administrative hearing pursuant to 42 C.F.R. Sec. 498.5. We disagree.
 
 
 12
 An "initial determination," as defined by the regulations, is a decision that a hospital either qualifies as a provider or is no longer entitled to be a provider. 42 C.F.R. Sec. 498.3. Thunderbird was never denied provider status for the Thunderbird facility and Samaritan had no right to a provider number for the Glendale facility once that facility was closed. Whether the old Samaritan number automatically transferred to Thunderbird, 42 C.F.R. Sec. 489.18(c), or automatically terminated due to a "cessation of business," 42 C.F.R. 489.52(b)(3), is the issue Samaritan wants decided. However, neither of these possibilities constitutes an "initial determination." In the first place, neither is set forth in the regulation's list of "initial determinations." 42 C.F.R. Sec. 498.3. Second, while the items listed as "initial determinations" are decisions that preclude a provider or prospective provider from participation, the automatic occurrences involved in this case are different in kind. As this case shows, at no time has Thunderbird or Samaritan been without reimbursement for services rendered. Of course, Samaritan could not seek reimbursement for the Glendale facility after its closure, and reimbursement has been available for the Thunderbird facility since the very day that it opened.
 
 
 13
 Samaritan contends that if we do not read the statute broadly to include its claim, then it will have no avenue of appeal from the decision to grant Thunderbird a new provider number. It is wrong. We need not manipulate the regulations to create a redundant appeals process.
 
 
 14
 In its briefs, Samaritan failed to tell this court precisely what injury Thunderbird suffered by reason of its being denominated a "new provider." However, it appears to us that the major injury is that the "new provider" designation will, by its very design, affect the amount of reimbursement that the provider at the Thunderbird facility receives.[3]
 
 
 15
 We have held that if the Secretary's classification of a hospital effectively fixes the hospital's reimbursement rate, then that decision is a "final determination" as referred to 42 U.S.C. Sec. 1395oo(a)(1)(A)(ii). Sunshine Health Sys. Inc. v. Bowen, 809 F.2d 1390, 1394-97 (9th Cir.1987). Therefore, the hospital is not required to await the issuance of its annual NPR before appealing the Secretary's decision to the PRRB. Id. at 1396. In Sunshine Health Sys., the Secretary had classified Sunshine as a "new hospital" for purposes of reimbursement during the Prospective Payment System's transition period. This meant that the hospital received a lower level of reimbursement than a hospital that had been denominated an "old hospital." The court found that because being classified as a "new hospital" fixed the amount of reimbursement the hospital would receive, the decision was a "final determination" of the amount of reimbursement, and was therefore immediately appealable pursuant to section 1395oo(a)(1)(A)(ii).
 
 
 16
 We see this case in the same way. Since the Secretary's denomination of Thunderbird as "new provider" effectively determined its rate of reimbursement, it has received a "final determination" from the Secretary that is directly appealable to the PRRB.
 
 
 17
 Thunderbird and Samaritan have been repeatedly advised throughout the administrative review process that the proper forum for the claim is the PRRB. The Appeals Council even referred the case to the PRRB. That claim is now pending before the Board. We find the agency's interpretation of its rules is proper and is consistent with the statute and the regulations. Therefore, the PRRB has jurisdiction and Samaritan has no standing to request review of the Secretary's decision in this court until the PRRB has spoken.[4] Indeed, until Samaritan has presented its claim to the PRRB, the courts lack jurisdiction to consider it. Pacific Coast Medical Enters., 633 F.2d at 138.
 
 CONCLUSION
 
 18
 The district court ruled correctly when it decided that the court had no jurisdiction to hear this case until Samaritan had exhausted its remedies before the PRRB. AFFIRMED.
 
 
 
 *
 Louis J. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services pursuant to Fed.R.App.P. 43(c)(1)
 
 
 **
 This disposition is not appropriate for publication and may not be cited by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Arizona Department of Health Services is the Health Care Financing Administration's [hereinafter "HFCA"] state survey agency in Arizona
 
 
 [2]
 Samaritan acquired the interest of both SamCor and SHS in Thunderbird. We are uncertain as to when this acquisition took place, although it was after the opening of the Thunderbird facility
 
 
 [3]
 We note that Samaritan confirmed this at oral argument
 
 
 [4]
 We, however, remain concerned because it appears that the Secretary (or his subordinates) has, at least at times, taken inconsistent positions by asserting before this court that the PRRB is the proper forum and asserting to the PRRB that it does not have jurisdiction. Accordingly, although we hold that the district court has no jurisdiction, our decision is subject to reconsideration by this Panel upon petition of Samaritan within sixty days of Samaritan's receipt of notification of any decision by the PRRB that it does not have jurisdiction to hear the merits of Samaritan's claim